UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DANIELLE NAILER** | \* | CIVIL ACTION: |
| **VERSUS** | \* | |
| **NEWELL NORMAND**, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS SHERIFF OF JEFFERSON PARISH; **KYLE FLETTRICH AND JOHN DOE**, INDIVIDUALLY, AND IN THEIR OFFICIAL CAPACITIES AS JEFFERSON PARISH DEPUTY SHERIFFS, **JAMES DIBBLE, CHARLENE JOHNSON, LELA SKINNER-ROSS, ELLEN SAVAGE, LINDA WRIGHT, KELLY HARRIS, CHARLES VEDROS, VONZELLE GABRIEL, RONI ADAMS, ROBERT DAMPIER, LAUREN LACOSTE** AND **MICHELLE BECNEL** | \* \* \* \* \* | NUMBER: **17-2362** SECT. ____, MAG. ____ |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## COMPLAINT

**NOW COMES** petitioner, **DANIELLE NAILER,** through undersigned counsel, who respectfully represents:

## I. JURISDICTION

1. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343 and the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States. Plaintiff also invokes supplemental jurisdiction for all claims cognizable under the laws of the State of Louisiana.

## II. PARTIES

**(PETITIONER)**

2.   **DANIELLE NAILER** (hereinafter "NAILER"), an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

**(DEFENDANTS)**

3.   **NEWELL NORMAND** (hereinafter "SHERIFF NORMAND"), in his official capacity as Sheriff of Jefferson Parish, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

4.   **KYLE FLETTRICH** (hereinafter "FLETTRICH"), individually, as a Jefferson Parish Sheriff's Deputy, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

5.   **JOHN DOE** (hereinafter "DOE"), individually, as a Jefferson Parish Sheriff's Deputy, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

6.   **JAMES DIBBLE** (hereinafter "DIBBLE"), individually, a health care provider at the Jefferson Parish Correctional Center (hereinafter "JPCC"), an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

7.   **CHARLENE JOHNSON** (hereinafter "JOHNSON"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

8.   **LELA SKINNER-ROSS** (hereinafter "SKINNER-ROSS"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

9. **ELLEN SAVAGE** (hereinafter "SAVAGE"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

10. **LINDA WRIGHT** (hereinafter "WRIGHT"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

11. **KELLY HARRIS**, (hereinafter "HARRIS"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

12. **CHARLES VEDROS** (hereinafter "VEDROS"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

13. **VONZELLE GABRIEL** (hereinafter "GABRIEL"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

14. **RONI ADAMS** (hereinafter "ADAMS"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

15. **ROBERT DAMPIER** (hereinafter "DAMPIER"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

16. **LAUREN LACOSTE** (hereinafter "LACOSTE"), individually, a health care

provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

17.   **MICHELLE BECNEL** (hereinafter "BECNEL"), individually, a health care provider at the JPCC, an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

18.   At all times relevant hereto, and in all actions of the above-named defendants herein, these acts were committed under color of law.

### III.  FACTUAL ALLEGATIONS

19.   On or about March 27, 2016, the petitioner, who is mentally disabled, was an inmate at the JPCC. The petitioner was in a holding cell that lacked a mat for her to sleep on. While in the holding cell petitioner knocked on the door and asked defendant deputy, FLETTRICH, who was in the hallway for a mat to sleep on. He responded by telling her to sleep on the floor. The petitioner responded and told FLETTRICH "You sleep on the floor!". In response, the defendants, FLETTRICH and DOE, both employees of the defendant, SHERIFF NORMAND, entered the cell, grabbed the petitioner and pulled her out through the cell door.

20.   After being pulled out the cell both defendants, FLETTRICH and DOE, pushed petitioner up against the wall in the hallway immediately outside the door to the holding cell. Both defendants grabbed her arms and pulled them behind her back. DOE had her right arm and FLETTRICH had her left arm. Defendant, FLETTRICH, then wrenched the petitioner's left arm behind her back breaking it at the humerus.

21.   The petitioner heard her arm break and screamed "You broke my arm!". The petitioner complained to both FLETTRICH and DOE, that her arm had been broken however,

they ignored her complaints and placed her back in the holding cell to cover up their wrongdoing. She remained in the holding cell for hours where she complained of pain. She was subsequently transferred to another cell where she remained for several hours. She continued to complain of left arm pain. Eventually the defendant, DIBBLE, came to examine her arm. Upon information and belief, he is a health care provider employed by CorrectHealth Jefferson, L.L.C. (hereinafter "CorrectHealth").

22. Upon information and belief, on or about March 29, 2016 at 1444 hrs., the petitioner was admitted into the JPCC medical infirmary to rule out a left arm fracture.

23. The CorrectHealth notes reflect that x-rays were supposed to be taken to rule out a left arm fracture.

24. NAILER was subsequently released from the JPCC infirmary on March 31, 2016 without any x-rays being taken of her left arm and without any treatment for her left arm fracture.

25. At all times mentioned herein, health care at JPCC was administered by employees of CorrectHealth. The defendants, LPN James Dibble, FNP Charlene Johnson, LPN Lela Skinner-Ross, LPN Ellen Savage, RN Linda Wright, RN Kelly Harris, LPN Charles Vedros, LPN Vonzelle Gabriel, RN Roni Adams, RN Robert Dampier, RN Lauren Lacoste and LPN Michelle Becnel, were the health care providers employed by CorrectHealth responsible for the medical care of NAILER.

26. On March 27, 2016, NAILER complained to the defendants, FLETTRICH and DOE, that her left arm broke when the defendant, FLETTRICH, wrenched it behind her back. Upon information and belief, she was initially evaluated by the defendant, DIBBLE, who noted that

NAILER complained of a left arm injury following an incident with a deputy in intake booking. Although it was obvious that petitioner's arm was broken, the defendant, DIBBLE, was deliberately indifferent to NAILER's medical needs and failed to take the action necessary to treat NAILER for her broken left arm.

27. Subsequently, between the dates of March 27 and March 31, 2016, NAILER's broken left arm was examined by the health care provider defendants, JOHNSON, WRIGHT, VEDROS, HARRIS, SKINNER-ROSS, SAVAGE, GABRIEL, ADAMS, DAMPIER, LACOSTE and BECNEL. Although it was obvious to these defendants that petitioner's left humerus was broken, the same defendants refused to take NAILER for an x-ray and treat her fracture. Ultimately, NAILER was discharged from the JPCC infirmary on March 31, 2016 without ever being x-rayed. The deliberate indifference to NAILER's serious medical needs by all of the named defendant health care providers resulted in unnecessary pain and suffering to NAILER as well as the improper healing of her left humerus and subsequent permanent disfigurement.

28. The decision by the defendant health care providers to not x-ray NAILER's broken left arm while she was under their medical care is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that said defendants did not base the decision to not x-ray NAILER on such judgment.

29. Alternatively, the defendant health care providers' decision to intentionally not x-ray NAILER's broken left arm while she was under their medical care was done to avoid the cost associated with the discovery of the fracture which would have included potential surgical expenses.

30. The above-described failures on the part of the defendant health care providers resulted in injury to NAILER as well as improper healing of her arm.

31. Defendant, DOE, witnessed this unjustified use of force on the petitioner and was in a position to stop the defendant, FLETTRICH, from breaking petitioner's arm, however he did nothing to prevent the use of excessive force or respond to FLETTRICH's excessive force. In addition, defendant, DOE, was immediately aware that defendant, FLETTRICH, had broken petitioner's left arm, however he failed to report this violation of petitioner's rights to anyone in authority. Alternatively, DOE's twisting of petitioner's right arm behind her back at the same time FLETTRICH wrenched petitioner's left arm contributed to FLETTRICH breaking petitioner's arm.

32. After the incident, the defendants, FLETTRICH and DOE, ignored the petitioner's obvious injury in the hopes that their violation of the petitioner's rights would go unnoticed.

33. As a result of this unjustified use of excessive force by the defendants, FLETTRICH and DOE, the petitioner suffered a permanent disabling and disfiguring injury to her left humerus.

34. As a result of the excessive use of force by defendants, FLETTRICH and DOE, in violation of the Fourth, Eighth and Fourteenth Amendments the petitioner incurred medical expenses.

35. At all times mentioned herein, the defendants, FLETTRICH and DOE, were acting in the course and scope of their employment as sheriff's deputies for SHERIFF NORMAND. As such, the defendant, SHERIFF NORMAND, is liable for the damages the defendants caused to the petitioner under the theory of respondeat superior under state law.

36. In addition, and at all times relevant to this suit, it was the policy and/or custom of the defendant, SHERIFF NORMAND, to inadequately and improperly investigate complaints against sheriff's deputies using excessive and/or abusive force against inmates at the JPCC. Acts of misconduct were instead tolerated by the SHERIFF NORMAND, including, but not limited to, prior incidents involving the defendant deputies in this case.

37. At all times relevant to this suit, it was the policy and/or custom of the defendant, SHERIFF NORMAND, to inadequately supervise and train his deputies, including the defendant deputies thereby failing to discourage further constitutional violations on the part of the deputies. The defendant, SHERIFF NORMAND, did not require appropriate in service training or retraining of deputies who were known to have engaged in misconduct.

38. At all times relevant to this suit, it was the policy and/or custom of the defendant, SHERIFF NORMAND, to inadequately respond to instances of excessive or punitive force by deputies. His inadequate responses included a refusal to terminate, suspend, discipline, warn, or in any way punish and/or retrain his deputies, including the defendant deputies, for incidents involving excessive force, thereby failing to adequately discourage further constitutional violations by the deputies including the defendant deputies in this case.

39. The defendant, SHERIFF NORMAND, knew or should have known of prior acts of excessive force on the part of the defendant deputies in this case. SHERIFF NORMAND ignored these prior incidents and hired and/or retained these defendants nonetheless, in the alternative, the defendant, SHERIFF NORMAND, negligently hired and retained the individually named defendant deputies in this case.

40. As a result of the above described policies and customs, deputies of SHERIFF

NORMAND, including the defendant deputies, knew that their actions would not be properly monitored by supervisory deputies and the misconduct would be tolerated rather than investigated and/or punished.

41. All the defendants are liable to the petitioner for punitive damages.

42. All the defendants are liable jointly, severally and insolido for the petitioner's injuries.

43. At all times relevant times defendants were acting under color of state law.

44. The defendants' actions were reckless, willful, wanton, and/or malicious.

45. Defendants individually and collectively, had the duty and ability to intervene to prevent the violation of the rights of the petitioner described herein but failed to do so.

46. The petitioner's injuries were solely and proximately caused by the intentional and/or negligent acts of the defendants as previously described.

## IV.  CAUSES OF ACTION

### Constitutional Claims Against Defendant Deputies

47. The actions of the individually named defendant deputies violated the petitioner's Fourth and Fourteenth Amendment right to be free from excessive force. The actions of the defendant deputies violated the petitioner's right under the Fourteenth Amendment to the U.S. Constitution to due process. Additionally, the actions of the defendants violated petitioner's Eighth Amendment right to be free from cruel and unusual punishment. The defendant deputies acted under color of law when they violated and conspired to violate the petitioner's rights.

### Constitutional Claims Against Defendant Health Care Providers

48. The actions of the individually named defendant health care providers violated the

petitioner's Eighth Amendment prohibition against cruel and unusual punishment and/or her Fourteenth Amendment right to due process of law. The defendant health care providers acted under color of law when they violated the petitioner's rights.

### State Law Claims Against Flettrich and Doe

49.  Defendants, FLETTRICH and DOE, also committed the state law torts of assault and battery against the petitioner. Additionally, on information and belief, defendants, FLETTRICH and DOE, unlawfully conspired to harm the petitioner. These defendants also intentionally inflicted emotional distress on the petitioner.

### Constitutional Claims Against Defendant, Sheriff Normand

50.  The above described policies and/or customs of defendant, SHERIFF NORMAND, show his deliberate indifference to the petitioner's constitutional rights and directly contributed to the violations of the petitioner's rights alleged in this complaint. Additionally, defendant, SHERIFF NORMAND, was aware of the violent propensities of the individually named defendants in this case, as well as their prior instances of misconduct, but nevertheless hired them and/or retained them. Defendant, SHERIFF NORMAND, is therefore liable to the plaintiff for the constitutional violations the petitioner suffered at the hands of the individually named defendants.

### State Law Claim Against Defendant, Sheriff Normand

51.  At all times relevant hereto, all of the individually named defendant deputies were acting within the course and scope of their employment with the defendant, SHERIFF NORMAND. Therefore, the doctrine of respondeat superior applies for all state-law torts alleged in this complaint against the deputies and the defendant, SHERIFF NORMAND, is liable to the

petitioner for the tortious acts of his employees. Additionally, SHERIFF NORMAND is liable for negligently hiring, training, retention and/or supervision of the defendant deputies.

### Attorney's Fees/Costs

52.  In addition to damages, the petitioner seeks attorney's fees and costs associated with this suit as provided for by 42 U.S.C. § 1988 plus judicial interest and for the defendants to bear all costs of these proceedings.

## V.  DAMAGES

53.  As a result of the above-described civil rights violations, petitioner suffered physical injuries, permanent disability, mental and emotional pain and suffering, anguish and distress, embarrassment, humiliation, and medical expenses all will be determined at a trial of this matter.

54.  In addition to recovering damages, the petitioner seeks reasonable attorney's fees in accordance with 42 U.S.C. § 1988, plus judicial interest, and for defendants to bear all costs of these proceedings.

## VI.  PRAYER

**WHEREFORE**, the petitioner, DANIELLE NAILER, prays that the defendants be duly cited and served copies of the above and foregoing, made to timely appear and answer, that the Court exercises its supplemental jurisdiction over the state claims, and after due proceedings, there be judgment in her favor and against the defendants, NEWELL NORMAND, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS SHERIFF OF JEFFERSON PARISH, KYLE FLETTRICH and JOHN DOE, INDIVIDUALLY IN THEIR CAPACITIES AS JEFFERSON PARISH SHERIFF'S DEPUTIES, and JAMES DIBBLE, CHARLENE JOHNSON, LELA SKINNER-ROSS, ELLEN SAVAGE, LINDA WRIGHT, KELLY HARRIS, CHARLES

VEDROS, VONZELLE GABRIEL, RONI ADAMS, ROBERT DAMPIER, LAUREN LACOSTE and MICHELLE BECNEL, holding them liable jointly, severally and insolido for all compensatory and punitive damages alleged herein, together with judicial interest, for all attorney's fees, and that the defendants bear all costs of these proceedings, and for all further legal, equitable and general relief available.

        Respectfully submitted;

        /s/  Gary W. Bizal
        **GARY W. BIZAL** (La. Bar No. 1255)
        **GARY W. BIZAL, L.L.C.**
        639 Loyola Avenue, Suite 1820
        New Orleans, Louisiana  70113
        (504)525-1328 Telephone  *  (504)525-1353 Fax
        piblaw@bellsouth.net
        ATTORNEY FOR PETITIONER, DANIELLE NAILER

**PLEASE SERVE:**

SHERIFF NEWELL NORMAND
JEFFERSON PARISH SHERIFF'S OFFICE
1233 Westbank Expressway
Harvey, LA 70058

DEPUTY KYLE FLETTRICH
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

LPN JAMES DIBBLE
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

FNP CHARLENE JOHNSON
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

LPN LELA SKINNER-ROSE
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

LPN ELLEN SAVAGE
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

RN LINDA WRIGHT
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

RN KELLY HARRIS
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

LPN CHARLES VEDROS
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

LPN VONZELLE GABRIEL
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

RN RONI ADAMS
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

RN ROBERT DAMPIER
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

RN LAUREN LACOSTE
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053

LPN MICHELLE BECNEL
Jefferson Parish Correctional Center
100 Dolhonde St.
Gretna, LA  70053